IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, : | | |
|     Plaintiff : | No. 1:18-cv-00756 | |
| : | | |
| v. : | (Judge Kane) | |
| : | | |
| APPROXIMATELY $147,800.00 IN U.S. : | | |
| CURRENCY SEIZED FROM A SAFE : | | |
| DEPOSIT BOX AT PEOPLE'S BANK : | | |
| HELD BY RAYNA HOMAN, : | | |
|     Defendant : | | |
| : | | |

**MEMORANDUM**

Before the Court is a motion for default judgment filed by the United States of America ("Plaintiff"). (Doc. No. 14.) For the reasons that follow, the Court will grant the motion and enter default judgment against Defendant and in favor of Plaintiff.

**I. BACKGROUND**

On April 5, 2018, Plaintiff initiated this action by the filing of a Verified Complaint of Forfeiture in rem (the "Verified Complaint"). (Doc. No. 1.) The Verified Complaint seeks to forfeit and condemn to the use of the United States approximately $147,800.00 in U.S. currency seized from a safe deposit box at People's Bank held by Rayna Homan (the "Defendant Currency"), pursuant to 21 U.S.C. § 881(a), in connection with an investigation into the illegal drug activities of Charles Homan, Rayna Homan's spouse. (Id. ¶¶ 1, 8, 10.)

The Verified Complaint alleges that on or about February 14, 2017, Charles Homan was stopped by Transportation Security Administration ("TSA") inspectors at the Baltimore International Airport ("BWI") after TSA discovered a certain amount of currency hidden in Charles Homan's carry-on luggage. (Id. ¶ 8.) During an interview with a Homeland Security

1

Investigations ("HSI") Task Force Officer, Charles Homan indicated that the currency was related to narcotics distribution, and further stated that he had additional currency and narcotics at his residence in York County, Pennsylvania. (Id. ¶ 9.) On or about the same date, HSI and the Pennsylvania State Police ("PSP") executed a state search warrant for Charles Homan's residence, which resulted in the seizure of contraband and currency. (Id. ¶ 10.) The search also revealed evidence that Charles Homan and Rayna Homan kept currency in a safe deposit box. (Id.) Thereafter, on or about February 15, 2017, pursuant to a state search warrant, HSI and PSP seized $147,800.00 in U.S. currency from a safe deposit box at People's Bank held by Rayna Homan. (Id. ¶ 11.) On or about November 28, 2017, a federal seizure warrant was issued for the $147,800.00 in U.S. currency pursuant to 21 U.S.C. § 881(a)(6). (Id.)

The Verified Complaint alleges that inquiries with the state of Pennsylvania on or about November 11, 2017 regarding employment and earnings history for Charles and Rayna Homan revealed negative results. (Id. ¶ 12.) The Verified Complaint asserts that from approximately March 2011 to February 2017 the Homans made payments in cash or legal tender of approximately $164,014.52. (Id. ¶ 13.) In addition, the Verified Complaint alleges that between 2009 and February 2017, the Homans paid approximately $59,000.00 on their home mortgage, for total expenditures of $223,014.52. (Id. ¶¶ 13, 14.) The Verified Complaint alleges that during that same period of time, the Homans had no source of income other than estate funds willed to Rayna Homan in the approximate amount of $77,000.00, and Charles Homan's claimed sale of C.A. Homan Roofing for approximately $105,000.00. (Id. ¶ 14.) Accordingly, the Verified Complaint alleges that the amount spent by the Homans exceeded their claimed income by $41,014.52. (Id.) The Verified Complaint asserts that no legitimate source of income funded

the $147,800.00 Defendant Currency or the $163,640.00 in currency seized from Charles Homan at BWI. (Id. ¶ 15.) Therefore, the Verified Complaint alleges that there is cause to believe that the Defendant Currency constitutes proceeds of, or is derived from proceeds traceable to, the commission or facilitation of violations of 21 U.S.C. §§ 841 and 846, and accordingly, the Defendant Currency is liable to forfeiture to the United States for its use, pursuant to 21 U.S.C. §881(a). (Id. ¶ 16.)

In connection with its filing of the Verified Complaint on April 5, 2018, the United States also filed a Legal Notice with the Court (Doc. No. 3), identifying the applicable procedures for any person asserting an interest in or claim to the Defendant Currency to follow in order to file a verified claim to the Defendant Currency. (Id.) At the same time, the Clerk issued an Arrest Warrant in rem for the arrest of Defendant Currency. (Doc. No. 4.) On July 12, 2018, the United States filed: a certificate of service (Doc. No. 5), indicating that on or about April 19, 2017, a copy of the Verified Complaint, Legal Notice and Arrest Warrant was served via certified mail on an individual known to the United States as Charles and Rayna Homan's legal counsel, Christopher A. Ferro, and a Declaration of Publication (Doc. No. 6), representing that notice of forfeiture in this case was posted on a government forfeiture internet site for at least thirty consecutive days, beginning April 27, 2018.[1] After obtaining entry of default from the Clerk of Court (Doc. Nos. 10, 11), on October 30, 2018, the United States filed the instant motion for default judgment (Doc. No. 14), with a proposed Order (Doc. No. 14-1), and supporting brief (Doc. No. 15).

---

[1] That Notice stated that "[a]ny person claiming a legal interest in the Defendant Property must file a verified claim with the court within 60 days from the first day of publication (April 27, 2018) of this Notice on the official government internet web site and an Answer to the complaint or motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days thereafter." (Doc. No. 6 at 2.)

## II.     STANDARD OF REVIEW

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2). Entry of default does not entitle a claimant to default judgment as a matter of right. 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987). Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action." Wright et al., supra, § 2688; Broad.

4

Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) ("Consequently, before granting a default judgment, the Court must . . . ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (citations omitted). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof." E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted). While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Here, the United States seeks default judgment and in rem forfeiture pursuant to 28 U.S.C. § 881 against the Defendant Currency. Section 881 provides the following description of property subject to civil forfeiture:

> All money, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions prescribes specific requirements governing forfeiture in rem actions. See Fed. R. Civ. P. Supp. R. G. Under the Rule, a complaint for forfeiture must be verified and state the grounds for subject matter jurisdiction, in rem jurisdiction over the property, and venue; describe the property with reasonable particularity, and state the property's location when any seizure

occurred as well as when the action is filed; identify the statute under which the forfeiture action is brought; and provide sufficiently detailed facts supporting a reasonable belief that the government will meet its burden of proof at trial. See id. at G(2). Further, if the property is already in the government's possession, custody or control, the Clerk must issue a warrant to arrest the property. Id. at (3)(b). Upon issuance of the arrest warrant, the government can arrest the property. Id. at (3)(c). The government must also publish notice of the forfeiture action for any potential claimants to the property of which it is not aware, and provide direct notice to any potential claimants known to exist. Id. at (4). For potential claimants not known to the government, it must publish notice within a reasonable time after the filing of a verified complaint, and can publish such notice on an official government forfeiture website for at least thirty consecutive days. Id. at (4)(a)(iv)(C). For potential claimants of the property known to the government, it must send notice of the action and a copy of the verified complaint to the potential claimants in accordance with Rule G. Id. at (4)(b)(i). To make a claim for the defendant property and avoid forfeiture, a potential claimant must file a claim with the Clerk of Court identifying the claimant's interest in the property within the time frame established by Rule G. Id. at (5)(a).

### III. DISCUSSION

Having reviewed the Verified Complaint, Legal Notice, Arrest Warrant, certificate of service and Declaration of Publication, as well as the moving papers filed by the United States, the Court finds that entry of default judgment against the Defendant Currency and in favor of Plaintiff is appropriate. As an initial matter, it appears from the Court's review of the above filings that the United States has complied with all requirements of Rule G governing asset

6

forfeiture actions – filing a verified complaint, obtaining an arrest warrant, sending notice of the action with appropriate documentation to counsel for the Defendant Currency owners,[2] and publishing notice of the action on its official forfeiture website, www.forfeiture.gov, for thirty consecutive days.  (Doc. No. 6.)  Despite proper notice, no answer to the complaint or claim to the Defendant Currency has been filed.  Accordingly, the United States requested entry of default from the Clerk, and after the Clerk's entry of default, filed the instant motion seeking entry of default judgment and a final order of forfeiture.

Further, the Court observes that Plaintiff's unchallenged allegations in the Verified Complaint, taken as true, state a legitimate cause of action for forfeiture, as the Verified Complaint alleges that Charles Homan admitted his involvement in illegal drug activity, and that the funds seized from him at BWI on February 14, 2017 were related to those illegal activities.  (Doc. No. 1 ¶ 9.)  Based on those admissions, a search of the Homan residence led to the ultimate seizure of the contents of Rayna Homan's safe deposit box containing the Defendant Currency.  (Id. ¶¶ 10-11.)  The lack of legitimate income sources for Charles and Rayna Homan during the relevant period suggests that the Defendant Currency was related to illegal drug activity and subject to forfeiture.  (Id. ¶¶ 12-16.)  See U.S. v. $88,000.00 in U.S. Currency, No. 17-1439, 2018 WL 1217446, at *3 (W.D. Pa. Feb. 7, 2018), report and recommendation adopted, No. 17-1439, 2018 WL 1183219 (W.D. Pa. Mar. 7, 2018) (holding that the United States met its burden to establish funds subject to forfeiture where currency was bundled in a manner indicative of drug trafficking, and there was a positive canine alert, as well as objectively false accounts of the source and use of the currency); U.S. v. $75,000.00 in U.S. Currency, No. 2:14-

---

[2] In its brief in support of its motion, the United States represents that after receiving service of the relevant documents, counsel for the Defendant Currency owners contacted the government to discuss the complaint.  (Doc. No. 15 at 2.)

cv-7633 (WHW), 2015 WL 3409468, at *4 (D.N.J. May 27, 2015) (finding that false statements to investigators, nervous behavior in front of TSA and agents, a history of involvement with illegal narcotics, sighting of marijuana in defendant's residence shortly before seizure, a drug canine's positive detection of controlled substances, as well as a lack of identified legitimate sources for the funds constituted grounds for forfeiture).

Finally, the Court finds that the three <u>Chamberlain</u> factors weigh in favor of entering default judgment against the Defendant Currency. First, if the Court declines to enter default judgment, the United States will be prejudiced because "it has no other remedy against the Defendant currency." <u>U.S. v. $16,010.00 in U.S. Currency</u>, No. 11-945, 2011 WL 2796338, at *6 (D.N.J. July 13, 2011). Second, the owners of Defendant Currency have not asserted any meritorious defenses to the claim of the United States through the filing of an answer or other responsive pleading to the complaint, the filing of a claim to the Defendant Currency, or through the filing of a response to the instant motion. Consequently, the Court is unable to conclude that the Defendant Currency owners have a viable, litigable defense. See <u>U.S. v. $6,700.00 in U.S. Currency</u>, 307 F. Supp. 3d 419, 423-24 (D.V.I. 2018) (finding entry of default judgment appropriate in the absence of evidence that any potential claimant would have a litigable defense were they to appear). Third, the Court cannot discern from the record any excuse or justification for the failure of the Defendant Currency owners to respond, apart from their culpability, where they were "properly notified of the action, had ample time to respond, and failed to appear." <u>Id.</u> Accordingly, the Court is satisfied that the <u>Chamberlain</u> factors counsel in favor of entering default judgment in favor of Plaintiff, and thus, will grant Plaintiff's motion for default judgment.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Plaintiff's motion for default judgment. (Doc. No. 14.) An appropriate Order follows.